UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
3:10-cv-410-RJC-DSC

| | |
|---|---|
| DEBRA G. MAYES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| GRAPHIC PACKAGING ) | |
| INTERNATIONAL, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

**THIS MATTER** comes before the Court on Defendant Graphic Packaging International, Inc's ("Defendant") motions: (1) to Strike Plaintiff Debra Mayes's ("Plaintiff") Fourth Amended Complaint, (Doc. No. 45), (2) to Strike Plaintiff's Fifth Amended Complaint, (Doc. No. 47), (3) for Summary Judgment, (Doc. No. 48), and (4) to Strike Plaintiff's Witness Statements, (Doc. No. 50). Plaintiff initially responded to Defendant's Motion for Summary Judgment with one sentence: "I Debra G. Mayes–Pro se wants the courts to know please I do not want my case dismiss." (Doc. No. 52). On October 7, 2011, the Court notified Plaintiff of her right to file material responsive to Defendant's Summary Judgment motion pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975). (Doc. No. 53). The Court warned Plaintiff that her failure to "present sufficient evidence from which a reasonable jury could return a verdict for [her]" by October 21, 2011, "may result in the Defendant being granted the relief it seeks by way of summary judgment, that is, the dismissal of the Complaint with prejudice." (Id.). Plaintiff responded with a four page handwritten letter. (Doc. No. 54).

## I. BACKGROUND

Plaintiff filed her initial complaint in this matter on August 30, 2010. (Doc. No. 2). Since then, she has amended her complaint five times. (Doc. Nos. 32; 33; 41; 42; 44; 46). Defendant answered each of Plaintiff's first four complaints. (Doc. Nos. 10; 35; 36; 43). Defendant has moved to strike Plaintiff's two most recent attempts at amendment. (Doc. Nos. 45; 47).

Plaintiff worked for Defendant from February 4, 2002 through July 24, 2009, and then again from May 24, 2010 through November 18, 2010. (Doc. Nos. 2: Plaintiff's Initial Complaint at 7; 48-2: Cathy Byrd Aff. at 5-6). Plaintiff's job was to run sheets of cardboard through a cutting and folding machine to prepare it for use in creating packages for Defendants' customers' products. (Doc. No. 48-2 at 2). Defendant's employees are unionized and belong to Local 1089 of United Steelworkers ("the union"). (Doc. No. 48-2 at 2). Defendant's Collective Bargaining Agreement ("CBA") with the union addresses plant rules and sets out discipline for violating these rules. (Id.). The CBA provides that an employee is to be terminated for four Group I violations of the same rule. (Id.). Group I violations include the "[r]epeated failure to produce a product meeting quality standards. (Id.). The first Group II violation, however, will result in a final warning or termination. (Id.).

On April 14, 2008, Plaintiff was issued a final warning, in lieu of termination for the Group II violation of displaying sexually explicit material in the workplace. (Id. at 3, 18). Plaintiff filed two grievances with Defendant in connection with this warning. (Doc. No. 48-1 at 4-5). First, Plaintiff simply denied that the underlying events occurred. (Id.). Second, Plaintiff alleged that her superior, Rene Tippen ("Tippen"), favored a male co-worker named Mike Woody. (Id. at 6-7). Defendant denied both grievances. (Doc. No. 48-2 at 21, 23).

On July 1, 2008, Plaintiff was issued an employee reprimand for running defective product on her machine. (Doc. No. 48-3 at 6). Plaintiff admits that the product was damaged. (Doc. No. 48-1 at 10). A male employee, Jason Lawson, was also to blame and received his own written reprimand for the same Group I violation. (Doc. No. 48-2 at 4).

Plaintiff received her second Group I violation for running defective product on September 9, 2008. (Doc. No. 48-3 at 8). Plaintiff again admits that the product was damaged and that she "didn't catch it." (Doc. No. 48-1 at 12). A male employee, Hall Worthy, was also to blame and received his own written reprimand for the same Group I violation. (Doc. No. 48-2 at 4, 32).

On December 18, 2008, Plaintiff was issued an "interoffice memorandum" regarding an incident in which she refused to sign-in on a form with her true name. (Doc. No. 48-2 at 36).

Plaintiff received another formal reprimand on February 5, 2009 for her third Group I violation for running defective product. (Id. at 38). Plaintiff admits that she was responsible for defects in two pallets that she "just didn't see." (Doc. No. 48-1 at 16). Two other male employees, John Bell and Hall Worthy, were also to blame and received their own written reprimands for the same Group I violation. (Doc. No. 48-2 at 4, 40-41). Because it was her third reprimand for the same Group I violation, Defendant suspended Plaintiff for one week without pay as per the CBA. (Id. at 4-5).

Five months later, on July 23, 2009, Plaintiff received her fourth formal reprimand for a Group I violation of running defective product. (Id. at 43). Plaintiff admits that the product was damaged. (Doc. No. 48-1 at 18-19). No other employee was involved in the incident. (Doc. No. 48-2 at 5). Defendant fired Plaintiff because this reprimand was her fourth for the same Group I violation. (Id.). The union filed a grievance and demanded arbitration on Plaintiff's

3

behalf, however, and the Defendant settled the matter by reinstating Plaintiff without backpay. (Doc. Nos. 48-1 at 20; 48-2 at 5). The parties agreed that one more reprimand for a Group I violation of running defective product would result in Plaintiff's termination. (Doc. No. 48-1 at 68-69). Plaintiff was back at work May 24, 2010. (Doc. No. 48-2 at 5).

Plaintiff filed an Equal Employment Opportunity Commission ("EEOC") charge stemming from the July 23, 2009 incident. (Doc. No. 48-1 at 60). She alleged that: (1) male co-workers "ran bad work" and were not disciplined; (2) Rene Tippin pointed a finger at her and yelled on April 22, 2009; and (3) Defendant discriminated against her and retaliated against her. (Id.). The EEOC issued Plaintiff a right to sue letter on July 2, 2010. (Doc. No. 48-1 at 69).

On August 20, 2010, Plaintiff received a Formal Counseling Statement addressing her Group I violation for failure to meet production standards–different from running defective product. (Doc. No. 48-2 at 47). Plaintiff was not terminated because this was a different Group I violation. (Id. at 5). The union filed a grievance on Plaintiff's behalf. (Id.). Plaintiff also filed her second EEOC charge, alleging the statement was issued in retaliation for Plaintiff's prior EEOC filing. (Doc. No. 48-1 at 32). The EEOC issued Plaintiff a right to sue letter on September 3, 2010. (Id. at 70).

Plaintiff again committed a Group I violation for running defective product on November 9, 2010. (Doc. 48-2 at 51). She received a written reprimand and her employment was terminated on November 18, 2010. (Id.). A male employee, Mike Carpenter, was also to blame and received his own written reprimand for the same Group I violation. (Doc. No. 48-2 at 6, 53). The union filed a grievance on Plaintiff's behalf. (Doc. No. 48-1 at 37). Plaintiff admits that the product was damaged, but argues that "mistakes happen all of the time." (Id. at 35-36). Plaintiff filed her third EEOC charge in response to her termination, alleging retaliation. (Doc. No. 48-1

at 68). The EEOC issued Plaintiff a right to sue letter on December 10, 2010. (Id. at 71).

Plaintiff filed her fourth, and final, EEOC charge on March 7, 2011. (Doc. No. 41-1 at 2). Plaintiff alleged that Mike Woody sexually harassed her throughout her employment. (Id.). The EEOC issued Plaintiff a right to sue letter on March 23, 2011. (Id. at 1).

**II. ANALYSIS**

A. <u>Amendments to Complaint</u>

Federal Rule of Civil Procedure 15(a) allows a party to "amend its pleading once as a matter of course . . . 21 days after service of a responsive pleading. . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." "A district court may deny a motion to amend when the amendment would be prejudicial to the opposing party, the moving party has acted in bad faith, or the amendment would be futile. . . . a district court has discretion to deny a motion to amend a complaint, so long as it does not outright refuse to grant the leave without any justifying reason." <u>Simmons v. United Mortg. and Loan Inv., LLC</u>, 634 F.3d 754, 769 (4th Cir. 2011).

Plaintiff's fourth amended complaint adds a claim that Defendant's actions caused her "severe depression." (Doc. No. 44 at 1). Plaintiff's fifth amended complaint details other ways Plaintiff feels her termination has negatively affected her. (Doc. No. 46). Plaintiff filed these purported amendments 220 and 221 days after Defendant filed its initial answer. (Doc. Nos. 10; 44; 46). These amendments would be futile as they only add allegations related to possible damages. For the reasons set forth below, the Court need not reach the issue of damages. Plaintiff's fourth and fifth amended complaints, (Doc. Nos. 44; 46), are stricken. Defendant's motions to strike Plaintiff's amended complaints, (Doc. Nos. 45; 47), are **GRANTED**.

B.  <u>Witness Statements</u>

Defendant moves to strike Plaintiff's three witnesses' statements and a portion of Plaintiff's first amended complaint.  (Doc. No. 50).  Plaintiff included a letter from Tiffany Johnson in her first amended complaint, (Doc. No. 32 at 25-26), and provided the Court copies of statements by John Able, Tomorrow Nelson, and Tamara Chisholm, (Doc. No. 37).  Defendant argues that these statements should be stricken from the record because none of the purported authors had any personal knowledge of any events supporting Plaintiff's case.  (Doc. No. 51).

"Generally, an affidavit filed in opposition to a motion for summary judgment must present evidence in substantially the same form as if the affiant were testifying in court.  Federal Rule of Civil Procedure 56[(c)(4)] specifically requires that affidavits submitted on summary judgment contain admissible evidence and be based on personal knowledge.  Thus, summary judgment affidavits cannot be conclusory or based upon hearsay."  <u>Evans v. Tech. Applications & Serv. Co.</u>, 80 F.3d 954, 962 (4th Cir. 1996).

John Able testified that Defendant "mistreated [Plaintiff], [Defendant] targeted [Plaintiff] and did a lot of harassment and retaliation."  (Doc. No. 37 at 2).  He also informed the Court that Plaintiff was the only African-American female in her department that ran her same machine.  (<u>Id.</u>).  Able's first statement is conclusory and offers nothing but his own legal conclusion based on undisclosed facts.  His second observation, however, appears to be based upon personal knowledge and may support Plaintiff's allegation of gender bias.  The Court will strike Able's conclusions that Plaintiff was mistreated, targeted, harassed, and retaliated against, but not the remainder of his statement.

Tomorrow Nelson testified that Plaintiff was "treated unfairly," "violated, harassed and

retaliated against because she stood up for herself." (Id. at 3). Nelson also included statements the Plaintiff has made to Nelson, speculation about Plaintiff's work ethic, and a plea for mercy from the court. (Id.). Nelson's characterizations of Defendant's treatment of Plaintiff are conclusory and devoid of any factual detail. Her other observations are inadmissible as hearsay and speculation. Nelson's statement is stricken from the record.

Tamara Chisholm testified to the stress that Defendant caused Plaintiff in terminating Plaintiff's employment. (Id.). This information is based on personal knowledge and probative evidence of any damages Plaintiff may have incurred. The Court will not strike Chisholm's statement.

Tiffany Johnson's statement appears as part of Plaintiff's first amended complaint. (Doc. No. 32 at 25-26). Johnson begins her statement by informing the Court that she is relaying hearsay. (Id. at 25). The Court will strike Johnson's statement from the record.

Defendant's Motion to Strike Plaintiff's Witness Statements, (Doc. No. 50), is **GRANTED IN PART AND DENIED IN PART**.

    C.    <u>Summary Judgment</u>

        1.    Standard of Review

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is material only if it might affect the outcome of the suit under governing law. Id.

The movant has the "initial responsibility of informing the district court of the basis for

7

its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).

Once this initial burden is met, the burden shifts to the nonmoving party. The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial." Id. at 322 n.3. The nonmoving party may not rely upon mere allegations or denials of allegations in his pleadings to defeat a motion for summary judgment. Id. at 324. The nonmoving party must present sufficient evidence from which "a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; accord Sylvia Dev. Corp. v. Calvert County, Md., 48 F.3d 810, 818 (4th Cir. 1995).

When ruling on a summary judgment motion, a court must view the evidence and any inferences from the evidence in the light most favorable to the nonmoving party. Anderson, 477 U.S. at 255. "'Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial.'" Ricci v. DeStefano, 129 S. Ct. 2658, 2677 (2009) (quoting Matsushita v. Zenith Radio Corp., 475 U.S. 574, 587 (1986)).

2. **Time-Barred Allegations**

Before a plaintiff may file suit under Title VII of the Civil Rights Act, she must file a charge of discrimination with the EEOC. Jones v. Calvert Group, Ltd., 551 F.3d 297, 300 (4th Cir. 2009). The plaintiff must file this charge with the EEOC within 180 days of each alleged act of discrimination. See 42 U.S.C. § 2000e-5(e); Jones, 551 F.3d at 300.

Plaintiff filed her first EEOC charge on August 18, 2009. (Doc. No. 48-1 at 60). She

8

received her first five written warnings more than 180 days before she filed this charge–three for running defective product, one for refusing to sign an attendance form, and one for displaying sexually explicit material.  See (Doc. No. 10: Defendant's Answer at 7-8).  Plaintiff's allegations regarding these reprimands are time barred.

Plaintiff filed her fourth EEOC charge on March 7, 2011.  (Doc. No. 41-1 at 2).  She alleged that Mike Woody sexual harassed her "[t]hroughout the course of [her] employment." (Id.).  Defendant argues that this claim is barred by the statute of limitations.  (Doc. No. 49 at 12).  But Plaintiff was not terminated until November 18, 2010.  (Id.).  Any harassment alleged to have occurred between September 8, 2010 and November 18, 2010 would be within 180 days of Plaintiff's EEOC charge.  Any claims based on alleged harassment before September 8, 2010 are barred.

3. **Disparate Discipline**

Plaintiff alleged sex discrimination with respect to Tippin favoring male employees. (Doc. Nos. 48-1 at 60; 41-1 at 2).  Plaintiff alleged that this favoritism led to both of her terminations–July 24, 2009 and November 18, 2010–and an April 22, 2009 incident in which Plaintiff alleges Tippin pointed and yelled at her.  (Id.).  This last allegation must be dismissed because finger pointing and harsh words alone are not materially adverse.  Title VII "does not set forth a general civility code for the American workplace."  Burlington N. and Sante Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006).  Instead, "the employer's challenged action [is actionable only where it] . . . would likely have dissuaded a reasonable worker from making or supporting a charge of discrimination."  Id. at 60.  "[N]ormally petty slights, minor annoyances, and simple lack of good manners will not create such deterrence."  Id. at 68.  The Supreme Court also included abusive language among such non-adverse maltreatment.  Id.  Tippin's alleged finger

9

pointing and yelling are not materially adverse.  Cf. Munday v. Waste Management of N. Am., Inc., 126 F.3d 239, 242 (4th Cir. 1997) (holding that employer's yelling during a meeting, directing others to ignore and spy on the employee, and refusing to speak with the employee were not adverse under a defunct standard).

Because Plaintiff has not presented any direct evidence of discrimination, the Court must evaluate her remaining claim under the McDonnell Douglas burden shifting framework.  See McDonnell Douglas Corp. v. Green, 411 U.S. 792, 803-04 (1973); Thompson v. Potomac Elec. Power Co., 312 F.3d 645, 649 (4th Cir. 2002).

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of [] discrimination. . . . The burden then must shift to the employer to articulate some legitimate, nondiscriminatory reason for [its action]. . . . [The employee must then] be afforded a fair opportunity to show that [the employer's] stated reason for [its action] was in fact pretext.

McDonnell Douglas, 411 U.S. at 803-04.  To establish her prima facie case, Plaintiff must show:

> (1) that [s]he is a member of the class protected by Title VII, (2) that the prohibited conduct in which [s]he engaged was comparable in seriousness to misconduct of employees outside the protected class, and (3) that the disciplinary measures enforced against [her] were more severe than those enforced against those other employees.

Cook v. CSX Transp. Corp., 988 F.2d 507, 511 (4th Cir. 1993) (discussing racial discrimination); see also Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 267 (4th Cir. 2005) (using the same standard in sexual discrimination cases).

Plaintiff is a female and clearly falls within a Title VII protected class.  42 U.S.C. § 2000e-2(b).  Plaintiff has failed, however, to prove either of the remaining prima facie elements.  To prove that Defendant disciplined her more harshly "than a similarly situated employee based on [her gender, Plaintiff] must show that [s]he is similarly situated with respect to performance, qualifications, and conduct.  Furthermore, the employee must generally show the same

10

decisionmaker made the disparate employment decisions." Holtz v. Jefferson Smurfit Corp., 408 F. Supp. 2d 193, 206 (M.D.N.C. Jan. 4, 2006) (internal citations and quotations omitted) (citing Radue v. Kimberly-Clark Corp., 219 F.3d 612, 716 (7th Cir. 2000); Harvey v. Anheuser-Busch, Inc., 38 F.3d 968, 972 (8th Cir. 1994)); see also Cohen v. Abbott Labs., Nos. 98-1565, 98-1628, 1999 WL 273425 (4th Cir. Apr. 27, 1999) (dismissing the plaintiff's sexual discrimination claim "because she has not presented any evidence of a similarly situated male whose misconduct was comparable to hers, yet who received less severe discipline").

Plaintiff has not provided any admissible evidence of any other employee's misconduct or disciplinary history. Plaintiff has only provided her own hearsay statements that she has heard around the plant of male co-workers with up to seven write-ups who were not terminated. (Doc. No. 48-1 at 9-10). Although Plaintiff's earlier reprimands are outside the limitations period, Defendant's responses to those incidents belie any claim of gender discrimination. In each of Plaintiff's first three reprimands for running defective product, a male co-worker was also at fault. (Doc. No. 48-2 at 4, 32, 40-41). In each incident, Defendant issued the same written reprimands to Plaintiff's male co-workers. (Id.). Plaintiff has failed to provide any proof that a similarly situated male co-worker received less severe discipline for equally serious misconduct.

    4.    **Retaliation**

Plaintiff alleges that Defendant retaliated against her in violation of Title VII by reprimanding her on August 20, 2010 and November 9, 2010 and firing her on November 18, 2010. (Doc. Nos. 41-1 at 2; 48-1 at 64, 68). Plaintiff alleged that the August 20 reprimand was given in retaliation for filing her earlier EEOC charges. (Doc. No. 48-1 at 64). Plaintiff alleged that Defendant's November reprimand and termination were a result of Tippin and Richard

Hasting's personal issues with Plaintiff and because she was successful in getting her job back following her July 2009 termination. (Doc. No. 48-1 at 68).

These claims must also be analyzed under the <u>McDonnell Douglas</u> burden shifting framework. <u>See</u> 411 U.S. at 803-04. In order to establish her prima facie retaliation claim, Plaintiff must show that (1) the employee engaged in protected activity; (2) an action was taken against her that a reasonable employee would have found materially adverse; and (3) that action had a causal connection to the protected activity. <u>U.S. E.E.O.C. v. Lockheed Martin Corp.</u>, 444 F. Supp. 2d 414, 418 (D. Md. 2006) (citing <u>Burlington</u>, 548 U.S. at 68).

Defendant does not dispute that Plaintiff's EEOC filings were protected activity. (Doc. No. 49 at 19). Plaintiff's August 20 and November 9 reprimands and her November 18 termination could all be considered materially adverse. Plaintiff has failed, however, to prove causation on any of these charges.

The reprimands were in direct response to Plaintiff's failure to meet production standards and running of defective product. Such intervening incidents of misconduct break Plaintiff's alleged chain of causation. <u>See</u> <u>Horne v. Reznick Fedder & Silverman</u>, No. 05-1025, 2005 WL 3076921, at *3 (Nov. 17, 2005) (noting poor performance and misconduct intervening between protected activity and firing); <u>Hankins v. AirTran</u>, No. 06-15406, 2007 WL 1705579 (11th Cir. June 14, 2007) ("intervening act of misconduct . . . severed the causal connection (if any) between [the plaintiff's] initial complaint of discrimination and [employer's] decision to terminate her employment"). Even if this element were met, Plaintiff's claim fails. Defendant had a "legitimate, nondiscriminatory reason for" reprimanding Plaintiff. <u>See</u> <u>McDonnell Douglas</u>, 411 U.S. at 803-04. She violated a production standard and ran defective product. Plaintiff has not shown that these reasons were pretextual. <u>Id.</u>

12

Plaintiff's November 18, 2010 termination was a result of Plaintiff's fifth reprimand for a Group I violation of running defective product. As shown above, Plaintiff's intervening production flaw and fifth reprimand break her alleged chain of causation. See Horne, 2005 WL 3076921, at *3; Hankins, 237 F. App'x at 521.

Defendant also had a "legitimate, nondiscriminatory reason for" firing Plaintiff. See McDonnell Douglas, 411 U.S. at 803-04. Plaintiff was terminated for committing the same Group I violation of the CBA. (Doc. Nos. 48-3 at 6, 8; 48-2 at 38, 43, 51). After four reprimands for the same violation, the CBA calls for the employee to be terminated. (Doc. No. 48-2 at 2). Plaintiff admits to running defective product in each incident. (Doc. No. 48-1 at 10, 12, 16, 18-19, 35-36). Plaintiff has failed to prove that either of these reprimands or her November 18 termination were retaliatory.

### 5. Sexual Harassment

Plaintiff alleged that Mike Woody sexual harassed her "[t]hroughout the course of [her] employment." (Doc. No. 41-1 at 2). As discussed above, any harassment alleged to have occurred between September 8, 2010 and November 18, 2010 is properly before this Court. But Plaintiff has not presented any evidence of such harassment during this time.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that:

1. Defendant's motions to strike Plaintiff's fourth and fifth amended complaints, (Doc. Nos. 45; 47), are **GRANTED**;

2. Defendant's Motion to Strike Plaintiff's Witness Statements, (Doc. No. 50), is **GRANTED IN PART AND DENIED IN PART**;

3. Defendant's Motion for Summary Judgment, (Doc. No. 48), is **GRANTED**; and

4  Plaintiff's case is **DISMISSED**.

Signed: October 28, 2011

Robert J. Conrad, Jr.
Chief United States District Judge